# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANDON WHITBY, et al.,<br><br>            Plaintiffs,<br>   vs.<br>CHELSEA INVESTMENT CORP., et al.,<br><br>            Defendants. | CASE NO. 14cv1633-LAB (BLM)<br><br>**ORDER APPROVING SETTLEMENT** |

The Whitby family and other tenants filed a class action against property management companies for restricting their children from playing in common areas at various apartment complexes. The parties settled for $3.25 million.

Last summer, the Court preliminarily approved the Settlement Agreement and certified a class of around 18,000 families. The Agreement allowed tenants to file claims for alleged discrimination and receive between $75 and $7,500. About 600 families, or 3% of the class, submitted claims. The Agreement also provided that the management companies would remove age-based restrictions from leases, policies, and signs; (ii) retrain property managers; and (iii) review the tenant grievance procedure. The Agreement obligated the management companies to pay about $1.8 million to tenants and reserved the remaining $1.4 million for Class Counsel, the 69 Class Representatives, the Claims Administrator, and the Class Guardian. No families objected to the Agreement.

The Court held a fairness hearing on January 9, 2016, to approve the Agreement. This order augments the rulings made at that hearing.

## I. Settlement Agreement

Rule 23 requires the Court to determine if a settlement is "fair, reasonable, and adequate." The Court examines the settlement "as a whole" and can't "modify or substitute certain provisions." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The Court must balance eight fairness factors: (i) the strength of the case; (ii) the settlement amount; (iii) the procedural posture; (iv) the risk, expense, complexity, and likely duration of litigation; (v) the risk of maintaining class action status; (vi) the views of counsel; (vii) the reaction of class members to the settlement; and (viii) if relevant, the presence of a government participant. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

The parties negotiated a fair settlement. The tenants' didn't have a strong case. For example, the discrimination claims relied on rules that restricted children from using "inner tubes" in the pool or leaving bikes in stairwells.[1] Some tenants said they received three-day eviction notices after their kids violated these rules, but they never alleged management evicted any tenants. Given the weakness of the case, negotiating $1.8 million for the class was a significant amount—the tenants may have obtained nothing.

The parties also settled after the Court dismissed the initial complaint, but before it ruled on a motion to certify the class and a second round of motions to dismiss. The tenants faced a substantial risk of losing before trial. But the management companies also faced risk: The tenants may have shown genuine disputes existed as to material facts, especially for those tenants threatened with eviction.

Class Counsel evaluated the case with due diligence before settling: Counsel's firm participated in about 40 depositions, spent $15,000 on private investigators, and $30,000 on experts to develop the tenants' case. Most importantly, at the hearing, Counsel represented that none of the 18,000 families objected to the Agreement.

But the parties structured the Agreement in a disfavored way that requires heightened scrutiny. "Under regular common fund procedure, the parties settle for the total amount of the common fund and shift the fund to the court's supervision. The plaintiffs' lawyers then

---

[1] Complaint, Dkt. 101, ¶ 113–14.

apply to the court for a fee award from the fund." *Staton v. Boeing Co.*, 327 F.3d 938, 969 (9th Cir. 2003). *Staton* held that "the parties to a class action may not include in a settlement agreement an amount of attorneys' fees measured as a percentage of an actual or putative common fund created for the benefit of the class." Rather, attorneys "must ordinarily petition the court for an award of fees, separate from and subsequent to settlement." *Id.* at 945.

The parties didn't follow the preferred procedure in *Staton*. The Agreement capped class member recovery at about $1.8 million and provided that Class Counsel would file a separate motion requesting fees not to "exceed the sum of 950,000."[2] The settlement in *Staton*, however, was different: the parties "conditioned the merits settlement upon judicial approval of the agreed-upon fees." *Staton*, 327 F.3d at 969. By contrast, here the parties structured the Agreement so that the Court could approve settlement, award class members $1.85 million, and separately award Counsel any fee below $950,000. The Agreement doesn't "inhibit district courts from engaging in independent determinations of reasonable fees" because the parties haven't crafted an "all-or-nothing approach [that] imposes pressure to approve otherwise acceptable and desirable settlements in spite of built-in attorneys' fees provisions." *Staton*, 327 F.3d at 971–72.

Nonetheless, when "a settlement agreement is negotiated *prior* to formal class certification, consideration of the[] eight *Churchill* factors alone is not enough to survive appellate review." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). In *Bluetooth*, the parties structured the agreement like the one here by "setting aside up to $800,000 for class counsel." *Id.* at 935. The Court didn't find this structure improper per se, but warned that district courts had a "special obligation" to ensure counsel didn't cheat the class. *Bluetooth* identified three warning signs: (1) "when counsel receive a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* at 947. Here, the parties negotiated the

---

[2] Settlement Agreement, Dkt. 218-2 at 21, 28.

Agreement before class certification, included a clear sailing provision, and provided for fees to revert to the defendants instead of the class. Settlement agreements with a common fund shouldn't be set up this way.

But after carefully considering *Bluetooth's* guidance, the Court finds that there's no evidence the parties colluded, and in this particular case, the Agreement is acceptable. Class Counsel's requested fee isn't a disproportionate amount of the Agreement. In *Bluetooth*, the class members received "no monetary distribution." *Id.* By contrast, here the class has access to almost $2 million, with another $300,000 for 69 named plaintiffs. Moreover, a magistrate, two retired judges, and a JAMS neutral facilitated or reviewed the Agreement and found the terms were a reasonable compromise. *See In re Ferrero Litig.*, 583 F. App'x 665, 668 (9th Cir. 2014) (settlement reached through "conferences with judicial officers" that "produced both monetary and injunctive relief for the class" "ameliorate the concerns regarding collusion"). And most importantly, because the underlying claims are precarious, the Court isn't concerned that Class Counsel settled too quickly just to obtain a fee.

The Court has a duty to ensure the class gets a fair deal, but it's also reluctant to stick its nose into negotiations between two adverse parties that bargained in good faith. Taken as a whole, and in the specific context of this case, the Court approves the Agreement.[3]

## II. Attorneys' Fees

The Court has a duty to ensure Class Counsel's fee is fair. *Staton*, 327 F.3d at 963. The percentage method is the best way to calculate the fees in this case: it's efficient and the $3.25 million Agreement provides a straightforward way to measure the value of the case. Courts typically award attorneys 25% of the fund, but the range is 20 to 30%, and the Court must "consider all the circumstances of the case" to reach "a reasonable percentage." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

---

[3] The Court confirms its previous findings (i) certifying the class for settlement; (ii) appointing Class Counsel, Class Representatives, and approving the class action as the best method for resolution; and (iii) approving the notice program and payment to the Claims Administrator for costs. Order Granting Preliminary Approval, Dkt. 221.

The 25% benchmark "should be adjusted" up or down "when special circumstances indicate that the percentage recovery would be either too small or too large." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). To determine if special circumstances exist, the Court considers the results, the benefits obtained for the class beyond cash, the risk; the burden on counsel, and any other relevant circumstances. *Bluetooth*, 654 F.3d 935 at 942. The benchmark here would be $812,500. Counsel says special circumstances exist to award his firm 29% or $950,000.

Class Counsel secured appropriate, but not exceptional, results. A typical class member will get $75 and the litigation may prevent managers from using trivial rules to threaten residents. Class Counsel says his firm deserves more money because the contingency fee made the case risky. But there's nothing unusual about taking a contingency fee in a class action like this. Counsel says his firm turned down work and spent significant time on this case, but that's not exceptional either. And there wasn't much substantive motion practice here—the Court ruled on one motion to dismiss and granted leave to amend. Counsel's work doesn't compare to other efforts where the Ninth Circuit approved a 28% fee. *See Vizcaino*, 290 F.3d at 1048.

Nonetheless, the Court grants the motion for fees. Courts can't approve a fee award just because the defendants don't object or because the fees "would in no way benefit the class." *Bluetooth*, 654 F.3d at 943. But "since the proper amount of fees is often open to dispute and the parties are compromising precisely to avoid litigation, the court need not inquire into the reasonableness of the fees even at the high end with precisely the same level of scrutiny as when the fee amount is litigated." *Staton*, 327 F.3d at 966.

The Ninth Circuit encourages courts to cross-check fee calculations by using the lodestar method to "confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate." *Bluetooth*, 654 F.3d at 945 (punctuation omitted). Class Counsel calculated a reasonable lodestar of about $1 million as a result of 2,500 hours of work for a legal team billing between $200 and $650 an hour over the course of two years. *Cf. Allen v. Bedolla*, 787 F.3d 1218, 1225 (9th Cir. 2015) ("though class counsel represented that the

fee award was less than his 'lodestar' figure, there were no express findings from the district court on what it considered to be a reasonable lodestar amount"). The lodestar confirms that the $950,000 request isn't off-base.

The Court won't deduct $137,500 from the negotiated amount just to conform with the typical benchmark. The management companies attempted to protect their interests and minimize uncertainty. "The unpredictability of attorney's fees may be just as important as their magnitude when a defendant is striving to fix its liability." *Evans v. Jeff D.*, 475 U.S. 717, 735 (1986). Here the legal claims are tenuous, no class member objected, the lodestar suggests the percentage is reasonable, and there's no evidence of collusion. The Court approves the requested fee. *See Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 922 (9th Cir.), *vacated as moot*, 772 F.3d 608 (9th Cir. 2014) (approving $1 million in fees for two years of work).

### III.  Attorneys' Costs

The Court also has a duty to ensure Class Counsel's requested costs are fair. The Agreement entitles Counsel to recover reasonable costs up to $75,000. Based on the Court's experience, that's a reasonable number for two years of litigation that included 40 depositions, the participation of 69 named plaintiffs, and efforts to represent about 18,000 families. The Court specifically questioned Counsel about particular expenses at the hearing and Counsel provided satisfactory explanations. Again, the Court is reluctant to interfere with an Agreement term reached after an eight-month negotiation process supervised by three judicial officers. The Court grants the request for $75,000 in fees.

### IV.  Class Representatives' Awards

Named plaintiffs in a class action may receive awards to recognize their extra efforts. But the Court must also guard against "the possibility that class representatives" "have sacrificed the interests of absent class members for their own benefit." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012). To determine if class representative awards are fair, the Court must consider relevant facts like "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the

amount of time and effort the plaintiff expended in pursuing the litigation, and reasonable fears of [ ] retaliation." *Staton*, 327 F.3d at 977.

The management companies agreed to pay the Class Representatives up to $295,000. Most of the Representatives requested awards of about $4,000 each. The Court questioned Class Counsel about these awards and credits his representation that the Representatives provided significant time and assistance that led to the Agreement. The Court approves $4,000 awards to 67 of the Class Representatives. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir.2000) (approving $5,000 awards to class representatives in a $1.7 million settlement).

The Whitby family requested a greater award. Class Counsel represented that Landon and Ruth Whitby were the tip of the spear in this two year campaign. And the 60 other Representatives didn't object to the Whitby's request for an enhanced payment. The Court approves an award of $13,500 each to Landon and Ruth Whitby.

### V. Class Guardian's Fee

The Court appointed an experienced JAMS neutral as Class Guardian for all minor class members. The Guardian reviewed the Agreement, found that it was fair, and represented that no minors objected. Despite working on the matter over multiple days, and the parties budgeting for $10,000 in fees, the Guardian only requested the daily JAMS rate of $6,000. The Court agrees that the Agreement treats the minor class members fairly, approves the Guardian's petition, and awards him $6,000 for his help.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

### VI. Summary

The Court approves the Settlement Agreement and the $88,000 in costs for the Class Administrator (Dkt. 228); grants Class Counsel's motion for $950,000 in fees, $75,000 in costs, and $295,000 for Class Representatives (Dkt. 223); and approves the Class Guardian's petition and awards him $6,000. (Dkt. 234.) The Court authorizes the Claims Administrator to review class claims and disburse funds in accordance with this Order and the Agreement. Finally, the Court grants the parties' joint motion to have Magistrate Judge Major retain jurisdiction over all disputes arising out of the Agreement. (Dkt. 239.)

**IT IS SO ORDERED**.

DATED: February 9, 2017

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge